UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HONG HUANG, An Individual Also Known as LINDA HUANG,<br><br>    Plaintiff,<br><br>       v.<br><br>JANET NAPOLITANO, In her Official Capacity as Secretary of the U.S. Department of Homeland Security,<br><br>and<br><br>MICHAEL AYTES, In his Official Capacity as Acting Director of the U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security<br><br>    Defendants. | Civ. Action No. 10-748 (CKK) |

MEMORANDUM OPINION
(July 9, 2010)

Plaintiff Hong Huang, also known as Linda Huang, filed the above-captioned action on May 10, 2010, seeking judicial review of the denial of her application for naturalization pursuant to 8 U.S.C. § 1421(c). She has named as Defendants Janet Napolitano, in her official capacity as Secretary of the U.S. Department of Homeland Security ("DHS"), and Michael Aytes, in his official capacity as Acting Director of the U.S. Citizenship and Immigration Services ("USCIS") within DHS. Presently pending before the Court is Defendants' [11] Motion to Transfer. As set forth therein, Defendants urge the Court to transfer this civil action to the United States District Court for the Southern District of Florida.[1] Plaintiff opposes the Motion. Upon thorough

---

[1] Defendants' Motion also includes a request for an extension of time to answer or otherwise respond to the Complaint. See Defs.' Mot., Docket No. [11]. By Order dated July 1, 2010, the Court granted Defendants' Motion as to this request only. See July 1, 2010 Order,

consideration of the parties' briefing, the relevant case law and statutory authority, as well as the record of this case as a whole, the Court finds that transfer to the United States District Court for the Southern District of Florida is appropriate and therefore shall GRANT Defendants' [11] Motion to Transfer for the reasons that follow.

## I.  BACKGROUND

Plaintiff is a national of China and currently resides in Aventura, Florida.  Compl., Docket No. [1], ¶ 5.  She first entered the United States on May 16, 1998, entering under a B-1 Visa, and has been a resident of the United States since that time.  *Id.* ¶¶ 8, 10.  In 2003, Plaintiff married a United States citizen, Zhi Wei Wu, in Miami, Florida.  Defs.' Mot., Att. 4 (Declaration of Sergio Mateo) (hereinafter, "Mateo Decl."), ¶ 4.[2]  On January 20, 2003, Wu filed a Petition for Alien Relative (Form I-130) on Plaintiff's behalf, and Plaintiff concurrently filed an Application to Adjust Status to that of a Lawful Permanent Resident (Form I-485).  *Id.* ¶ 4.  Both the I-130 and the I-485 were filed with the USCIS District Office in Miami, Florida.  *Id.*  The Plaintiff's I-485 application was approved at the Miami Field Office on April 1, 2004.  *Id.*

On January 27, 2009, Plaintiff filed an Application for Naturalization (Form N-400), with

---

Docket No. [12], at 2-3.  Accordingly, Defendants' request to transfer this action is the sole issue now pending before the Court with respect to Defendants' Motion.

[2] In reviewing a motion to transfer under 28 U.S.C. § 1404(a), a court may consider undisputed facts outside the pleadings.  *Cooper v. Farmers New Century Ins. Co.*, 593 F. Supp. 2d 14, 18-19 (D.D.C. 2008).  Defendants have submitted the Declaration of Sergio Mateo, an Immigration Services Officer with the Miami District of USCIS, located in Miami, Florida, in support of their Motion to Transfer.  *See* Meteo Decl. ¶ 1.  Plaintiff has not disputed any of the facts set forth in the Mateo Declaration nor has Plaintiff otherwise challenged the Court's reliance on the declaration.  *See generally* Pl.'s Opp'n.  Accordingly, in setting forth the relevant background, the Court considers the undisputed facts set forth in the Mateo Declaration.

the National Benefits Center. *Id.* ¶ 5. Pursuant to USCIS standard operating procedures, Plaintiff's application was subsequently transferred to the field office having jurisdiction over the applicant's place of residence — here, the Miami Field Office — for adjudication. *Id.* Plaintiff appeared at the Miami Field Office for interviews in connection with her N-400 Application on September 22, 2009, and on January 14, 2010. *Id.* Plaintiff's N-400 Application was subsequently denied by the Miami Field Office Director on March 8, 2010. *Id.* On that same day, the Miami Field Office also issued Plaintiff a Notice to Appear, charging her with being removable from the United States. *Id.* ¶ 6. The Notice to Appear was based on the Miami Field Office's conclusion that Plaintiff had been inadmissible at the time of her adjustment of status in 2004 and was therefore removable pursuant to 8 U.S.C. § 1227(a)(1)(a). *Id.* Plaintiff is currently scheduled to appear for a master calendar hearing in front of an Immigration Judge in Miami, Florida, on August 18, 2010, to begin removal proceedings. *Id.*

Plaintiff filed the above-captioned action on May 10, 2010. *See generally* Compl. As set forth in the Complaint, Plaintiff alleges that the denial of her naturalization application was in error "because she was a lawfully admitted Permanent Resident of the United States at the time of her application; she satisfied the actual and continuous residency requirements; was of good moral character as defined in the INA and interpreted through the Code of Federal Regulations; and she met all of the other eligibility requirements for naturalization." *Id.* ¶ 16. In addition, Plaintiff alleges that Defendants unlawfully commenced removal proceedings by issuing the Notice to Appear simultaneously with the denial of her application for naturalization "for the purpose and intent of circumventing [Plaintiff's] statutory right to *de novo* review . . . of her naturalization application" before a United States District Court. *Id.* ¶ 28. According to

Plaintiff, commencement of the removal proceedings deprived her of the right to further administrative or judicial review of the denial of her naturalization application, to which she has a statutory right; she asserts that the decision to issue the Notice to Appear concurrent with the denial of her naturalization application was therefore arbitrary, capricious, and an abuse of discretion. *Id.* ¶¶ 28-30.

In Count I of her Complaint, Plaintiff seeks *de novo* review of the Miami Field Office Director's denial of her N-400 Application for Naturalization pursuant to 8 U.S.C. § 1421(c) and a declaratory judgment that she is eligible for naturalization. *Id.* ¶¶ 1, 16, 18-22. In Count II, she seeks review of the Defendants' action pursuant to the Administrative Procedures Act, alleging that the decision denying her naturalization application and the decision to issue a Notice of Appearance simultaneously with the denial of her N-400 Application, which she alleges was done for the purpose of circumventing her statutory right to *de novo* review, were arbitrary, capricious, and an abuse of discretion. *Id.* ¶¶ 23-33. In Count III, Plaintiff seeks issuance of a preliminary injunction enjoining the removal proceedings in Miami, Florida, pending *de novo* review by the Court of Plaintiff's N-400 Application. *Id.* ¶ 46.[3]

On June 25, 2010, Defendants filed the now-pending [11] Motion to Transfer, in which they assert that this case should be transferred to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). In filing their Motion, counsel for Defendants advised the Court that she had

---

[3] Although Plaintiff's Complaint includes a claim for a preliminary injunction, she did not simultaneously file a motion for a preliminary injunction separate from the Complaint, as is required under Local Civil Rule 65.1(c) for applications for preliminary injunctions. Accordingly, the filing of Plaintiff's Complaint, without more, did not constitute an application for a preliminary injunction. Plaintiff has since indicated an intent to file a separate Motion for a Preliminary Injunction, and pursuant to the schedule adopted by the Court and set forth in its July 1, 2010 Order, such motion is due by no later than July 9, 2010.

conferred with counsel for Plaintiff pursuant to Local Civil Rule 7(m) and had been advised that Plaintiff opposed the Motion to Transfer and also intended to file a Motion for a Preliminary Injunction to enjoin the removal proceedings in Miami, Florida, which are scheduled to begin on August 18, 2010. *See* Defs.' Mot. at 2. Accordingly, in an effort to ensure that the issues raised by the parties were resolved in an expeditious and efficient manner, the Court held an on-the-record telephone conference call with counsel for all parties on July 1, 2010. *See* July 1, 2010 Order, Docket No. [12]. At that time, the Court discussed the manner in which this case should proceed. The Court advised the parties that expedited briefing on Defendants' Motion to Transfer was necessary to ensure that this Court may resolve the question of venue in a timely manner and that Plaintiff's motion for a preliminary injunction may be considered and resolved by the appropriate court without delay. *Id.* In addition, the Court set an expedited schedule for the briefing of Plaintiff's proposed motion for a preliminary injunction to assure that Plaintiff's motion would be fully briefed and ready for review — whether by this Court or by the Southern District of Florida — sufficiently in advance of the August 18, 2010 master calendar hearing at issue. *Id.*[4]

Pursuant to that schedule, Plaintiff filed her [13] Opposition to Defendants' Motion to Transfer on July 6, 2010, and Defendants filed their [14] Reply in support of their Motion to Transfer on July 7, 2010. Accordingly, Defendants' Motion to Transfer is now fully briefed and

---

[4] Pursuant to the Court's July 1, 2010 Order, Plaintiff's Motion for a Preliminary Injunction, along with Plaintiff's Motion for Leave to File Under Seal and a proposed redacted version of the Motion for a Preliminary Injunction, as may be appropriate, are due by no later than July 9, 2010; Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction and/or Motion to Dismiss is due by no later than July 23, 2010; and Plaintiff's Reply in Support of Her Motion for a Preliminary Injunction and/or Opposition to Defendants' Motion to Dismiss is due by no later than July 30, 2010. *See* July 1, 2010 Order at 3.

ripe for the Court's resolution.

## II. LEGAL STANDARD

Defendants argue that this Court should exercise its discretion to transfer this case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court is afforded broad discretion to decide whether transfer from one jurisdiction to another is proper under 28 U.S.C. § 1404(a). *SEC v. Savoy Indus. Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). The decision to transfer is made by an "individualized, case-by-case consideration of convenience and fairness . . . ." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The Court must therefore initially determine whether this action "might have been brought" in the Southern District of Florida. *Id.* at 616. In an action brought against an officer or employee of the United States, venue is covered by 28 U.S.C. § 1391(e), which provides that:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).

Even if venue is proper in the Southern District of Florida, the Court may transfer a case only if the balance of private and public interests weighs in favor of transfer. *Greater*

6

*Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001). Private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citing James W. Moore & Brett A. Ringle, *Federal Practice* ¶ 0.345[5] (2d Ed. 1995); 15 Charles A. Wright et al., *Federal Practice and Procedure* §§ 3848-53 (2d ed. 1986)); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). However, the deference normally given to a plaintiff's choice of forum is "lessened when the plaintiff's forum choice 'lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter.'" *S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) (citing *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979)). The plaintiff's choice of forum is also "conferred less deference by the court when [it] is not the plaintiff's home forum." *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24 (D.D.C. 2002) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)).

The public interest factors include: (1) the degree to which the courts in both venues are familiar with the governing laws; (2) the relative congestions of the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *See Jumara*, 55 F.3d at 879-80 (citing Moore & Ringle, *supra*, ¶ 0.345[5]; Wright et al., *supra*, §§ 3854; *Trout Unlimited,* 944 F. Supp. at 16.

### III.  DISCUSSION

As set forth in Defendants' Motion to Transfer, Defendants move the Court, in its discretion, to transfer the above-captioned action to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) on the basis that it is a more appropriate forum in which to litigate this dispute.  *See* Defs.' Mem. in Support of Mot. to Transfer (hereinafter, "Defs.' Mem."), at 3-5.  Plaintiff's oppose the Motion, asserting that venue is appropriate in the District of Columbia and that Defendants have failed to demonstrate that transfer is appropriate.  *See generally* Pl.'s Opp'n.  For the reasons set forth below, the Court concludes that this case should be transferred to the Southern District of Florida in the interest of justice and shall therefore grant Defendants' Motion to Transfer venue.

In so deciding, the Court declines to address an argument raised by Defendants for the first time in the Reply — namely, that this Court lacks jurisdiction to consider Plaintiff's Complaint and/or venue is improper in the District of Columbia pursuant to 8 U.S.C. § 1421(c), such that transfer of this case to the Southern District of Florida is mandatory.  Section 1421(c) provides that:

> [a] person whose application for naturalization . . . is denied, after a hearing before an immigration officer . . ., may seek review of such denial **before the United States district court for the district in which such person resides** . . . .  Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing *de novo* on the application.

8 U.S.C. § 1421(c) (emphasis added).  Based on this language, Defendants argue for the first time in their Reply that *de novo* review of an application for naturalization is limited to the United States district court for the district in which such person resides and that this provision

therefore trumps the general venue provision of 28 U.S.C. § 1391, such that venue in this District is improper. *See* Defs.' Reply at 2-4. Alternatively, Defendants appear to suggest that this language deprives this Court of subject matter jurisdiction over Plaintiff's Complaint. *See id.* Significantly, neither argument was raised in Defendants' Motion to Transfer. *See generally* Defs.' Mem. Indeed, Defendants did not cite to the venue provision in 8 U.S.C. § 1421(c) in their initial Motion, instead arguing that "[t]his case is governed by the general venue statute, 28 U.S.C § 1391, which establishes default rules for venue that apply to federal lawsuits where the underlying statutes do not specify their own venue rules." Defs.' Mem. at 5; *see also* Defs.' Reply at 3, n. 2 ("Defendants acknowledge that their motion to transfer focuses on discretionary transfer rather than mandatory dismissal or transfer based on 8 U.S.C. § 1421(c). Nevertheless, the result is the same under either analysis - i.e., the case should be transferred to the Southern District of Florida.").

    As a general rule, courts should decline to consider arguments raised for the first time in reply. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) ("We need not consider this argument because plaintiffs . . . raised it for the first time in their reply brief."); *McBride v. Merrell Dow & Pharm.*, 800 F.2d 1208, 1211 (D.C. Cir. 1986) ("Considering an argument advanced for the first time in a reply brief . . . is not only unfair to an appellee, but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered.") (internal citation omitted). This is particularly so in this case given that Defendants' assertion regarding the proper interpretation of 8 U.S.C. § 1421(c) appears to be an issue of first impression in this Circuit. Defs.' Reply at 4. As this argument was not raised in Defendants' Motion to Transfer, the Court has not had the benefit of a response from Plaintiff as to the merits of Defendants'

interpretation, further underscoring the difficulties of evaluating Dependants' argument on this novel issue of law.  Although Defendants suggest that the language in 28 U.S.C. § 1421(c) may be jurisdictional in nature, the Court has discretion to address the question of venue before addressing any jurisdictional arguments.  *See Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 79 (D.D.C. 2009) ("Adjudicative efficiency favors resolving the venue issue before addressing whether subject matter jurisdiction exists."); *Kazenercom TOO v. Turan Petroleum, Inc.*, 590 F. Supp. 2d 153, 157, n. 3 (D.D.C. 2008) (noting that a court can immediately take up the question of *forum non conveniens* under 28 U.S.C. § 1404(a) before addressing subject matter or personal jurisdiction); *Cheney v. IPD Analytics, LLC*, 583 F. Supp. 2d 108, 116-17 (D.D.C. 2008) ("Courts have discretion to resolve issues such as venue that do not affect the merits of the case, without deciding the matter of personal jurisdiction.").  Moreover, as indicated above, the Court finds that discretionary transfer is appropriate in this case pursuant to 28 U.S.C. § 1404(a).  The Court therefore declines to consider Defendants's argument regarding mandatory transfer as it was raised for the first time in their Reply and because the Court determines that discretionary transfer pursuant to 28 U.S.C. § 1404(a) is appropriate in this case.  Nevertheless, while the Court does not at this time determine whether the venue language included in section 1404(a) mandates transfer in this case, it emphasizes that a plaint reading of the quoted language in the statute, at a minimum, clearly indicates Congress' intent that the United States district court located in the district in which an applicant resides is appropriately positioned to review the denial of an applicant's naturalization application.  With this in mind, the Court now turns to consider Defendants' arguments regarding discretionary transfer under section 1404(a).

As indicated above, 28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties

and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In assessing whether transfer of venue is appropriate under this provision, the Court must first address the threshold question of whether this action "might have been brought" in the Southern District of Florida. *Van Dusen*, 376 U.S. at 616. As to this point, the parties both agree that venue is proper in the Southern District of Florida. *See* Defs.' Mem. at 5-6; Pl.'s Opp'n at 3 (Plaintiff "does not dispute that this action could have been brought in the Southern District of Florida"). Accordingly, the only issue now before the Court is whether the relevant private and public interest factors counsel in favor of transfer. *Greater Yellowstone Coalition*, 180 F. Supp. 2d at 127.

    *A.    Private Factors*

The Court begins by considering the private interests outlined above — namely, (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. First, Plaintiff's choice of forum is entitled to less than ordinary deference as Plaintiff is not a resident of the District of Columbia and this action bears no "meaningful ties" to the District of Columbia. *S. Utah Wilderness Alliance*, 315 F. Supp. 2d at 86. Indeed, "venue is only proper in the District of Columbia 'if sufficient activity giving rise to the plaintiffs' cause of action' occurred here," and based on Plaintiff's Complaint it appears that very little, if any, activity giving rise to Plaintiff's cause of action occurred in the District of Columbia. *Al-Ahmed v. Chertoff*, 564 F. Supp. 2d 16, 20 (D.D.C. 2008) (plaintiff's choice of forum entitled to

11

substantially less deference where activity underlying claims occurred outside of the relevant jurisdiction); *Aftab*, 597 F. Supp. 2d at 80 (deference to a plaintiff's choice of forum is "weakened" where "plaintiff is not a resident of the forum and 'most relevant events occurred elsewhere'") (quoting *Hunter v. Johanns*, 517 F Supp. 2d 340, 344 (D.D.C. 2007)). As noted above, Plaintiff resides in Florida; her N-400 Application was denied by the Miami Field Office in Florida; the Notice to Appear was issued by the Miami Field Office; and Plaintiff's removal proceedings will take place before an Immigration Judge located in Miami, Florida. Mateo Decl. ¶¶ 4-7. While Plaintiff names as Defendants the Secretary of DHS and the Acting Director of USCIS, the D.C. Circuit has cautioned that "[c]ourts in this circuit must examine challenges to [] venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia [] [b]y naming high government officials as defendants." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). In this case, although Plaintiff generally alleges in her Complaint that Secretary Napolitano and the USCIS Acting Director were responsible for the complained-of actions, *see* Compl. ¶¶ 28, 40, Plaintiff has alleged no facts in support of this assertion and the evidence in the record — unrebutted by Plaintiff — demonstrates that the challenged decisions were in fact made locally by the Miami Field Office, *see* Mateo Decl. ¶¶ 4-7.

Having failed to demonstrate that Defendants were personally involved with the decisions at issue in this litigation, Plaintiff alternatively argues in her Opposition that Defendants have promulgated "policies [that have] resulted in the intentional and willful issuance of a Notice to Appear to commence removal proceedings in an attempt to strip this Court of jurisdiction and circumvent [Plaintiff's] statutory rights." Pl.'s Opp'n at 2. According to Plaintiff, "[t]hese

decisions by high-ranking officials would not have arisen in the Miami Field Office, but would be a policy developed at USCIS's headquarters in the District and implemented nationally." *Id.* Plaintiff, however, has not offered any evidence or factual support for her present allegation in her pleadings that Defendants are responsible for implementing a nationwide policy that resulted in the simultaneous issuance of a Notice to Appear with the denial of Plaintiff's naturalization application. Indeed, such an allegation does not even appear in Plaintiff's Complaint. *See generally* Compl. As noted above, Plaintiff's Complaint focuses solely on the actions of the Miami Field Office with respect to her N-400 Application and Notice to Appear. Despite her present allegations, Plaintiff's claims in this action are not framed as a broad challenge to immigration policies allegedly promulgated and implemented by high-ranking DHS or USCIS officials, and Plaintiff makes no allegations in her Complaint regarding the existence of any nationwide policy, developed and implemented by Defendants, that has resulted in the actions challenged in this litigation. *See id.* ¶¶ 28, 40. In this circumstance, "[w]here [] 'the only real connection [the] lawsuit has to the District of Columbia is that a federal agency headquartered here is charged with generally regulating and overseeing the [administrative] process, venue is not appropriate in the District of Columbia.'" *Al-Ahmed*, 564 F. Supp. 2d at 19-20 (quoting *Abusadeh v. Chertoff*, Civ. Act. No. 06-2014, 2007 WL 2111036, at *6-7 (D.D.C. July 23, 2007) (internal quotation marks and citation omitted)).

Regardless, Plaintiff's assertion that "these officials had some involvement in policy decisions that affect [her]" is nonetheless lacking, as "attenuated or insignificant involvement by an official in the District of Columbia does not support venue here." *Aftab*, 597 F. Supp. 2d at 82. Plaintiff seeks judicial review of the decision denying her application for naturalization — a

decision which she does not dispute was made by the Miami Field Office. Although Plaintiff now claims in her pleadings that Defendants in the District of Columbia promulgated a nationwide policy with the intent to deprive her of her statutory right to obtain *de novo* review of that denial, this assertion goes solely to the question of the Court's jurisdiction to review Plaintiff's claim under 8 U.S.C. § 1421(c). The ultimate merits of Plaintiff's present legal challenge involve the decision by the Miami Field Office to deny Plaintiff's naturalization application. Even assuming Plaintiff had proffered sufficient support for her present allegation that Defendants promulgated policies affecting her statutory right of review, by Plaintiff's own allegations, these policies had no role in the actual *substance* of the decision she now seeks to challenge — i.e., the denial of her N-400 Application — but go only to the separate non-merits question regarding jurisdiction. As the case law cited by Plaintiff herself demonstrates, this jurisdictional issue may be properly raised before and decided by the federal court sitting in the forum in which the underlying denial of the naturalization application was made. *See* Pl.'s Opp'n at 4-5 (citing cases from the Second and Sixth Circuits addressing the question of whether initiation of removal proceedings precludes the court from exercising jurisdiction over claims relating to the denial of a naturalization application).

Finally, Plaintiff indicates that her decision to file the instant Complaint in this District was driven, in part, by concern that if the local South Florida community "learns of allegations" in this case, the information could be used by third parties for an "improper purpose" and have a "devastating negative economic impact" on Plaintiff and the local South Florida community. Pl.'s Opp'n at 4. As an initial matter, Plaintiff herself has already placed the particular allegations with which she is concerned on the public record. The Court agrees with Defendants

14

that "[p]articularly in the age of the Internet, there is no reason to believe that Plaintiff's community will not learn of the allegations in this case simply because she has filed her lawsuit in this jurisdiction." Defs.' Reply at 9. More importantly, Plaintiff has failed to offer any case law or other legal authority indicating that concern over the impact of publicity regarding her administrative review lawsuit supports venue in the District of Columbia. Nor has Plaintiff argued that the federal court in Florida is not sufficiently able to address any legitimate concerns regarding public disclosure of potentially damaging allegations. In the absence of such proof, the Court is unpersuaded that Plaintiff's speculative concerns regarding the potential impact of negative publicity support venue in this District.

     Second, Defendants' choice of forum is the Southern District of Florida, as is clearly evidenced by the pending Motion to Transfer. Third, Plaintiff's claims arose in the Southern District of Florida, not in the District of Columbia. Plaintiff resides in Florida; the initial decision approving her adjustment of status in 2004 was made by the Miami Field Office; the challenged decision denying Plaintiff's N-400 Application was made by the Miami Field Office; the Notice to Appear was issued by the Miami Field Office; and Plaintiff's removal proceedings will take place before an Immigration Judge located in Miami, Florida. Mateo Decl. ¶¶ 4-7. Plaintiff's arguments that her claims did not arise in Florida are without merit. Specifically, Plaintiff contends that this case should be properly characterized as having arisen in the District of Columbia because "USCIS' decision to issue a Notice to Appear and commence removal proceedings simultaneously with the denial of naturalization . . . is an intentional decision by USCIS headquarters pursuant to a policy applicable nationally . . . [that] was not made by the Miami Field Office, but would be a directive established in this District to be applied nationally."

Pl.'s Opp'n at 4. But again, Plaintiff offers no evidence in support for her present claims in her pleadings that Defendants have promulgated such a policy. Moreover, as discussed above, this argument, even if true, goes solely to the threshold question of jurisdiction; by contrast, it is undisputed that the events underlying the merits-based question of whether Plaintiff's N-400 Application was unlawfully denied arose solely in Miami, Florida, which is located in the Southern District of Florida.

Turning to the final three private interest factors regarding the convenience of the parties and witnesses and the ease of access to sources of proof, the Court finds that these factors weigh neither in favor of nor against transfer of venue. Plaintiff and her counsel of record are both located in Florida. However, "[b]ecause this action involves an administrative review that the court is likely to determine on the papers, the location of counsel — already given 'little, if any, weight' in transfer determinations — makes no difference here." *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 69 (D.D.C. 2003) (quoting *Vencor Nursing Ctrs. v. Shalala*, 63 F. Supp. 2d 1, 6 n. 4 (D.D.C. 1999)). Similarly, although any potential witnesses with respect to Plaintiff's claims are likely located in the Southern District of Florida, there is no indication in the record that any potential witnesses may be unavailable for litigation in either forum. *See Mohammadi v. Scharfen*, 609 F. Supp. 2d 14, (D.D.C. 2009) ("The convenience of the witnesses 'is considered only to the extent that the witnesses may actually be unavailable for trial in one of the fora.'") (quoting *Mahoney v. Eli Lily & Co.*, 545 F. Supp. 2d 123, 127 (D.D.C. 2008)). Finally, while the administrative record is presently located at the Miami Field Office, which is located in the Southern District of Florida, "its location should be afforded little weight." *S. Utah Wilderness Alliance*, 315 F. Supp. 2d at 88 (citing *Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F. Supp.

16

525, 527 (D.D.C. 1987)).

On balance, then, because Plaintiff is not a resident of this forum and the substantive issues in this case primarily involve decisions made by officials at the Miami Field Office, and because there is no indication in the present record that either forum is significantly more convenient for the parties, the private interests of the parties favor transfer to the Southern District of Florida.

  B.   *Public Interests*

The Court turns next to consideration of the public interest factors.  This case involves the application of federal law, with which both this Court and the Southern District of Florida are equally familiar, and the Court has no reason to suspect that minor differences in the forums' calendar will materially affect the timely resolution of Plaintiff's claims.  *See Aftab*, 597 F. Supp. 2d at 83 (noting that the "transferee district is presumed to be equally familiar with the federal laws governing [plaintiff's] claims" and that the difference in the forum's calendars "is relatively minor"); *see also Mohammadi*, 609 F. Supp. 2d at 19 ("because the plaintiff's claims are based on federal law, the court recognizes 'the principle that the transferee federal court is competent to decide federal issues correctly'") (quoting *In re Korean Air Lines Disaster of Sept. 1, 1983,* 829 F.2d 1171, 1175 (D.D. Cir. 1987)).  Neither of these factors therefore weighs heavily in favor of or against transfer.

By contrast, the final public interest factor — namely, the local interest in deciding local controversies at home — weighs in favor of transferring this case to the Southern District of Florida, which has a stronger local interest in this litigation than does the District of Columbia. As a general matter, "[t]here is a local interest in having localized controversies decided at

home." *Sierra Club*, 276 F. Supp. 2d at 70 (internal quotation marks omitted). "This rationale applies to controversies . . . requiring judicial review of an administration decision." *Id.* In this case, Plaintiff, a resident of Florida, seeks to challenge the Miami Field Office's decision denying her N-400 Application. All material events underlying Plaintiff's claims occurred within the Southern District of Florida. Insofar as Plaintiff also seeks interim injunctive relief enjoining the master calendar hearing presently scheduled for August 18, 2010, in Miami, Florida, and barring local officials from continuing further with Plaintiff's removal proceedings, it would appear that the United States District Court for the Southern District of Florida is better positioned to do so, and may have superior interest in the outcome of such proceedings. *Cf. Aftab*, 597 F. Supp. 2d at 84 (finding case implicated local interests where plaintiff sought order compelling local USCIS office to expedite proceedings on naturalization application); *Abusadeh*, 20007 WL 2111036, at *8 (same). Plaintiff's arguments to the contrary, based on her unsupported allegation that the challenged decisions by the Miami Field Office were influenced by a nationwide policy promulgated out of this District, are without merit. *See* Pl.'s Opp'n at 5. Accordingly, because the Southern District of Florida is equally able to timely and competently resolve Plaintiff's federal question lawsuit and because it appears to have a superior interest in doing so, the Court finds that these public interest factors further counsel in favor of transferring this action to the Southern District of Florida.

### IV.  CONCLUSION

For the reasons set forth above, the Court finds that the balance of public and private interest factors favor transfer of this case to the Southern District of Florida. In the interests of justice, the Court shall therefore GRANT Defendants' [11] Motion to Transfer this case to the

United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

An appropriate Order accompanies this Memorandum Opinion.

Date: July 9, 2010

                                              /s/
                                         **COLLEEN KOLLAR-KOTELLY**
                                         United States District Judge